IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ATAIN SPECIALTY INSUR. CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-8343 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| J&M HAULING CO., INC., ) | |
| FLORENTINA SANCHEZ PEREZ, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Florentina Sanchez Perez's motion [17] to dismiss or stay the declaratory judgment action filed by Plaintiff Atain Specialty Insurance Company. For the reasons set forth below, Defendant Perez's motion [17] is denied. This case is set for further status hearing in September 20, 2016 at 9:00 am.

**I.    Background[1]**

Atain Specialty Insurance Company ("Plaintiff") is a Michigan corporation with its principal place of business in Farmington Hills, Michigan. J&M Hauling ("J&M") is an Illinois corporation with its principal place of business in Morris, Illinois. Defendant Florentina Sanchez Perez ("Perez") is Special Administrator of the estate of Francisco Mondragon Acosta ("Acosta"). Summit Design + Build, LLC ("Summit") is an Illinois limited liability company with its principal place of business in Chicago, Illinois.

Plaintiff issued J&M a policy providing Commercial General Liability ("CGL") coverage

---

[1] The Court accepts as true the facts alleged in Plaintiff's amended complaint and makes all reasonable inferences in his favor. See *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

1

from September 24, 2012 to September 24, 2013 ("Policy"). [1-1], Ex. 1. Summit hired J&M to perform a tear-down of a bar in Evanston, Illinois. [1-2] at 2. J&M retained various individuals including Acosta to perform the tear down. See [1-5]. On July 25, 2013, in the course of the project, one of those individuals struck Acosta with a crowbar, causing him injuries and resulting in his death. [1-2], Underlying Lawsuit Complaint at Count I, ¶ 9; Count II, ¶ 8; Count III, ¶ 9; Count IV, ¶ 7; Count V, ¶ 6; Count VI at ¶ 7; Count VII, ¶ 7. The Evanston police investigated the incident and interviewed J&M's representative and all persons at the jobsite. See [1-4]. Perez then initiated an Occupational Safety and Health Administration ("OSHA") investigation of the incident, in which J&M signed an agreement with OSHA agreeing to a finding that J&M failed to report an employee death in violation of OSHA. See [1-5].

On March 20, 2015, Defendant Perez filed a complaint in Cook County Circuit Court alleging the wrongful death of her husband on July 25, 2013. In the underlying lawsuit, Defendant Perez sued J&M as the demolition subcontractor at the jobsite, Summit as the design company that retained J&M to perform the demolition, and Preferred Development, Inc. ("Preferred") as the owner of the building that retained Summit. See [1-2]. Plaintiff asserts that J&M never provided Plaintiff with notice of the underlying lawsuit or the earlier investigations by the Evanston Police or OSHA. Summit tendered the underlying lawsuit to Plaintiff seeking a defense as a purported additional insured on the Policy Plaintiff had issued to J&M. [1] at ¶ 5. After receiving this first notice, Plaintiff denied coverage to Summit on the basis that it is not an additional insured on the Policy. *Id.* at ¶ 5. With notice of the Underlying Lawsuit provided by Summit, Plaintiff retained counsel to defend J&M against the Underlying Lawsuit under reservation of rights to deny coverage and initiate coverage litigation to confirm that it has no obligation to defend Plaintiff against the Underlying Lawsuit. *Id.* at ¶¶ 3-4.

On September 22, 2015, Plaintiff filed a declaratory judgment action in this Court against Sanchez Perez, J&M Hauling Inc., and Summit Design + Build, LLC. Plaintiff brings five claims in its complaint: failure to provide timely notice precludes coverage (Count I); the employer's liability exclusion applies to exclude coverage (Count II); the Subcontractors Exclusion applies to exclude coverage (Count III); the Workers' Compensation Exclusion applies to exclude coverage (Count IV); and Summit is not an Insured under the policy (Count V). In her motion [17], Defendant Perez asks the Court to dismiss or to stay the declaratory judgment action filed by Plaintiff, contending that the Court should decline to exercise jurisdiction under the relevant Supreme Court precedent, including *Brillhart v. Excess Ins. Co. of America*, 62 U.S. 491 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in

original). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011).

**III. Analysis**

Defendant asks the Court to dismiss or to stay the declaratory judgment action filed by Plaintiff, contending that the Court should decline to exercise jurisdiction under the relevant Supreme Court precedent, including *Brillhart v. Excess Ins. Co. of America*, 62 U.S. 491 (1942), and *Wilton v. Seven Falls Co. et al.*, 515 U.S. 277 (1995). Plaintiff argues that the Seventh Circuit routinely rejects the factors laid out in *Brillhart-Wilton*, and even if the Seventh Circuit did not, the *Brillhart-Wilton* factors are not present here.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, provides that "[i]n a case of actual controversy within its jurisdiction * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* § 2201(a). "A federal court applying the Declaratory Judgment Act must evaluate the parties' rights based on the same body of substantive law that would apply in a conventional action." *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). The purpose of the Declaratory Judgment Act is "to allow for the efficient resolution of disputes by an early adjudication of the rights of the parties." *Id.* (citing 10B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2751 (3d ed. 1998)). The Declaratory Judgment Act "gives the district court the discretion to declare the rights of the litigants." *Id.* at 378 (citing 28 U.S.C. § 2201(a)). The Supreme Court has said as much:

> Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying

4

> litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton,* 515 U.S. at 288 (footnote omitted); see also *Brillhart,* 316 U.S. at 494–95.

*Wilton* "holds that the Declaratory Judgment Act confers discretion on the district courts to decline to hear cases." *Hellman*, 610 F.3d at 378. While parallel state proceedings are neither necessary nor sufficient for a district court to decline to hear a declaratory judgment suit, such proceedings are one factor to be considered. *Id.* (citing *Sta–Rite Indus. v. Allstate Ins. Co.,* 96 F.3d 281, 287 (7th Cir. 1996)).

In *Nationwide Insurance v. Zavalis,* 52 F.3d 689, 693 (7th Cir. 1995), the Seventh Circuit articulated the following inquiry: "how real [is the] prospect" that "the declaratory action may present factual questions that the state court has also been asked to decide?" *Hellman*, 610 F.3d at 378 (quoting *Zavalis*, 52 F.3d at 693). "This question is broader than a simple inquiry into whether proceedings are 'parallel.'" *Id.* To answer that inquiry, "the federal court should consider (among other matters) whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time." *Zavalis*, 52 F.3d at 692.

With the precise contours of the inquiry laid out above, the Court first recognizes that the parties are not identical in this action and the underlying lawsuit in state court. Plaintiff is not a party to the Underlying Lawsuit, and cannot be brought into such action because direct actions

by underlying plaintiffs are not allowed in Illinois, and issues of insurance coverage cannot be heard by the jury hearing a claim for bodily injury. See *Marchlik v. Coronet Ins. Co.*, 239 N.E. 2d 799, 802 (Ill. 1968) (explaining that underlying plaintiffs cannot bring direct actions against an insurer); *Richardson v. Economy Fire and Cas. Co.*, 485 N.E. 2d 327, 329 (Ill. App. Ct. 1985) (same). Furthermore, Preferred Development, Inc., the owner of the building that retained Summit, is a defendant in the underlying lawsuit in state court, but it is not a party in this case.

Nor are the issues in this case and the underlying lawsuit identical. Counts I and V involve facts not in dispute in the state court case. The complaint that Plaintiff filed in this Court initiated an insurance coverage dispute on the duty to defend under an insurance policy that requires contract interpretation and application of insurance coverage, while the underlying lawsuit in state court will turn on the alleged negligence in connection with Acosta's death. As other cases in this district previously have recognized, a difference in the relevant issues of the two cases is a reason to resolve a coverage disputes on the duty to defend despite a pending state court injury suit. See, *e.g.*, *Gen. Ins. Co. of Am. v. Clark Mall, Corp.*, 841 F. Supp. 2d 1057, 1062 (N.D. Ill. 2012).

Furthermore, the underlying lawsuit will not be binding on Plaintiff because Plaintiff is not a party to the underlying lawsuit and is not bound by that ruling regarding insurance coverage. See *id.* (holding that in an insurance coverage dispute, "precisely the opposite is true since no matter what the outcome of the underlying state court action might be, it will not bind" the insurer "and will not relieve this court of its obligation to decide the numerous questions presented by" the insurance coverage litigation). Even if issues resolved in this case may affect the pending state court case in some fashion, an insurance carrier does not have to wait for state litigation, in which it is not a party, to resolve itself. "The purpose of the Declaratory Judgment

Act is to facilitate efficient outcomes." *Hellman*, 610 F.3d at 382. Here, that purpose is best pursued by allowing Plaintiff to go forward with its challenge to its duty to defend.

**IV.     Conclusion**

For the reasons set forth above, Defendant Perez's motion [17] is denied. This case is set for further status hearing on September 20, 2016 at 9:00 am.


Date: September 9, 2016

_____
Robert M. Dow, Jr.
United States District Judge